# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| ABC IP, LLC, a Delaware limited liability company, | ) ) ) | CASE NO. 3:26-CV-05045-MDH |
| RARE BREED TRIGGERS, INC., a Texas corporation, | ) ) ) ) | **AMENDED COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT** |
| and | ) ) | |
| RBTM LLC, a Wyoming limited liability company | ) ) ) | **JURY TRIAL DEMANDED** |
| Plaintiffs. | ) ) ) ) | |
| v. | ) ) | |
| Cornfire Arsenal LLC, a Missouri Limited Liability Company, | ) ) ) | |
| Corn Gunworks LLC, a Missouri Limited Liability Company, | ) ) ) ) | |
| and | ) ) | |
| Patrick Andrew Corn, an individual, | ) ) | |
| Defendants. | ) | |

This is an action for patent and trademark infringement in which ABC IP LLC ("ABC"), Rare Breed Triggers, Inc. ("Rare Breed"), and RBTM LLC ("RBTM") (collectively, "Plaintiffs") accuse Cornfire Arsenal LLC, Corn Gunworks LLC, and Patrick Andrew Corn (collectively, "Defendants") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, and 12,636,403; infringing Plaintiffs' trademark rights; and engaging in unfair competition as follows:

## PARTIES

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3. RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, STE 1200, Sheridan, Wyoming 82801.

4. Cornfire Arsenal LLC is a limited liability company organized under the laws of Missouri with an address of 301 North 1st Street, PO Box 283, Jasper, Missouri 64755.

5. Upon information and belief, Corn Gunworks LLC is a limited liability company organized under the laws of Missouri with an address of 301 North 1st Street, PO Box 283, Jasper, Missouri 64755.

6. Upon information and belief, Patrick Andrew Corn is an individual residing at 13811 E Noah Rd, Nevada, MO 64772, who is an owner of Cornfire Arsenal LLC and Corn Gunworks LLC and directs their operations, including directing Cornfire Arsenal LLC and Corn Gunworks LLC to sell products in violation of the Asserted Patents and FRT Marks.

## JURISDICTION AND VENUE

7. This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)–(c), 281, and 284–85; trademark infringement; false designation of origin; and unfair competition under 15 U.S.C. §§ 1114 and 1125(a).

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

2

9. Personal jurisdiction over Defendants is proper in this District because the Defendants reside in and have a regular and established place of business in this District.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in or have committed acts of infringement and have a regular and established place of business in this District.

## BACKGROUND

11. This lawsuit asserts (ii) direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 12,529,538 ("the '538 Patent"), 12,578,159 ("the '159 Patent"), and 12,636,403 ("the '403 Patent) (together, "the Asserted Patents"); and (ii) trademark infringement, false designation of origin, and unfair competition with regard to Plaintiffs' well-known FRT trademark.

12. The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

13. The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

14. The '538 Patent was lawfully and properly issued by the United States Patent and Trademark Office on January 20, 2026. Each and every claim of the '538 Patent is valid and enforceable. A true and correct copy of the '538 Patent is attached as Exhibit C.

15. The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit D.

16. The '403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the '403 Patent is valid and enforceable. A true and correct copy of the '403 Patent is attached as Exhibit E.

17. ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

18. RBTM is the owner of the trademark FRT and variations thereof. Since at least 2020, the FRT mark has been used by Plaintiff Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT trademark has come to be uniquely identified with Rare Breed and a valuable identifier of Rare Breed's products. In addition to strong common law rights in the FRT trademark, RBTM also owns the following federally registered trademarks and pending applications, including the right to enforce the marks against infringers:

| Mark | Goods | App. no. | Reg. no. | App. date | Reg. date |
|---|---|---|---|---|---|
| FRT | triggers for firearms | 97248519 | 8187914 | 2022-02-01 | 2026-03-24 |
| FRT-15 | triggers for firearms | 97245949 | 7004418 | 2022-01-31 | 2023-03-21 |
| FRT-22 | triggers for firearms | 97248530 | 8232406 | 2022-02-01 | 2026-04-28 |
| FRT-47 | triggers for firearms | 97248528 | 8232405 | 2022-02-01 | 2026-04-28 |
| FRT-MR3 | triggers for firearms | 99714625 | | 2026-03-20 | |
| FRT-RD3 | triggers for firearms | 99714703 | | 2026-03-20 | |
| FRT-15L3 | triggers for firearms | 98715335 | 8225451 | 2024-08-24 | 2026-04-21 |

Together, Plaintiffs' common law rights in and federal trademark registrations and pending applications are referred to as the "FRT Marks." A true and correct copy of Registration No.

4

8,187,914 is attached as Exhibit G. A true and correct copy of Registration No. 7,004,418 is attached as Exhibit H. A true and correct copy of Registration No. 8,232,406 is attached as Exhibit I. A true and correct copy of Registration No. 8,232,405 is attached as Exhibit J. A true and correct copy of Registration No. 8,225,451 is attached as Exhibit K.

19. Rare Breed is the exclusive licensee of the Asserted Patents and the FRT Marks.

20. Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

21. Upon information and belief, Defendants have committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

**THE INVENTIONS**

22. A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

5

23. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

24. In contrast, in what Plaintiffs have coined a "forced reset" trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be mechanically moved to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

25. The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

26. The '784 Patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and

6

varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

27. The '538 Patent provides a safety mechanism for a firearm that employs a cam selector, a lever, and a trigger. The cam selector contains multiple recesses and is configured to operate between a first mode, a second mode, and a third mode. In the first mode, a portion of the trigger referred to as a first trigger tail portion is movable within the first recess. In the second mode, the first trigger tail portion is allowed to engage the second recess and be moved down by a cam portion of the second recess when the cam selector rotates. In the third mode, the cam selector is configured to prevent the trigger from being pulled.

28. The '403 Patent describes and claims a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) "forced reset" semiautomatic mode.

29. The claims of the patents define the scope of the patented inventions.

## THE INFRINGING DEVICES

30. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including the following (collectively, the "Infringing Devices"):

I. **The Super Safety**

31. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale a (3-Position) Super Safety ("the Super Safety"), which embodies the technology claimed in at least the '247, '784, '538, '159, and '403 Patents.

7

32. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale the Super Safety via the website cornfirearsenal.com and https://corngunworks.com/super-safety-kits/, in multiple variants, including at least:

a. A partial kit, which includes at minimum the cam and cam lever components, and may further include one or more additional components—when these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247, '784, '538, '159, and '403 Patents—and/or;

b. A complete kit, which includes at minimum the cam and cam lever components and additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger); and/or

c. A complete kit preinstalled in a receiver and/or complete firearm, which includes cam and cam lever components and additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger) preinstalled in an AR-pattern receiver.

33. Exemplary photographs are shown below:





34. The Super Safety can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with

disconnector, and "forced reset" semiautomatic with cam modes by moving the safety selector laterally between positions.

## II.    The Milspec Active Reset Conversion

35.    On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale a (3-Position) "Atrius Forced Reset Selector" ("the Milspec Active Reset Conversion"), which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

36.    On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale the Milspec Active Reset Conversion via the website cornfirearsenal.com    https://corngunworks.com/ambidextrous-milspec-active-reset-conversion-ambi-marc/, and https://corngunworks.com/milspec-active-reset-conversion-marc/, in multiple variants, including at least:

        a.    As a standalone product; and/or

        a.    In conjunction with separate trigger mechanism parts; and/or

        b.    Pre-installed in a receiver and/or complete firearm.

37.    Exemplary photographs are shown below:







38.     The Milspec Active Reset Conversion can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by rotating the safety selector between positions.

**INFRINGEMENT OF THE FRT MARKS**

39.   On information and belief, Defendants are distributing, advertising, and/or selling products that do not originate with Plaintiffs but that nonetheless bear or are promoted in association with the FRT Marks.

40.   Defendants are falsely associating their products with Plaintiffs' well-known FRT Marks.

41.   Defendants are advertising their products as "FRT" as shown at: https://corngunworks.com/search.php?search_query=FRT&section=product. Exemplary images are shown below:





## Glock Active Reset trigger Kit

Was: $79.99
**Now: $69.99**

**SKU:** GLK FRT FL
**Weight:** 3.00 Ounces
**Shipping:** Calculated at Checkout

**Trigger Shoe Style:** *

◉ Flat Shoe
◯ Curved Shoe

**Current Stock:** 0

❗ Out of Stock - Returning Soon

**Quantity:**

ADD TO CART    ADD TO WISH LIST

**Overview**

## PRODUCT DESCRIPTION

GLOCK Active Reset Trigger KIT

Package includes

(1) Flat trigger shoe.

(1) Glock ART trip.

(1) Ghost performance 3.5 lbs disconnector.

(1) Ghost performance spring kit.

Trigger is printed in carbon fiber nylon durability and flexibility under strain.

FRT Conversion parts are 316 stainless steel
Our Glock kit fits all models Glock gen 1-5 - Non ambi.



42.     Despite Defendants' marketing, Defendants' products are **not** one of Plaintiffs' FRT products.

43.     Defendants' unauthorized use of the FRT Marks to identify and promote their products is likely to mislead consumers into falsely believing that Defendants' products are in fact Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

44. The only reason Defendants would use the FRT Marks in connection with their products is to trade on the goodwill Plaintiffs have developed in the FRT Marks, and thus Defendants' conduct is willful.

## COUNT I — INFRINGEMENT OF THE '247 PATENT

45. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

46. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Super Safety and Milspec Active Reset Conversion.

47. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

48. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a trigger mechanism and functions as a cam that in at least one mode, both causes the reset of the trigger and locks the trigger during the cycle of operation. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | <br><br>cornfirearsenal.com and https://corngunworks.com/super-safety-kits/<br><br><br><br>**The Super Safety**<br><br>*See also*, Ex. F, Super Safety 3D Printed Active Trigger System v4.4, ("Super Safety Guide") at 12 |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear catch and a hook for engaging a disconnector (orange). |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| |  (Plaintiff-generated renderings of the Super Safety here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. <br><br> (**Hammer Set Position Above**) |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | **(Hammer Released Position Above)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (brown) has a sear. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions. |

19

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | <br>**Trigger Member Set Position Above** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position.<br><br><br>**Trigger Member Released Position Above** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red). |

20

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | **Disconnector Hook Engaged Above** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Super Safety, shown in yellow, in fire control mechanism pocket) **Super Safety Cam with Lobe and Lever** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position. |

21

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | <br><br>**Cam and Lobe First Position Above**<br><br>In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode.<br><br><br><br>**Cam and Lobe Second Position Above** |
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode, |

| ’247 Patent Claim 15 | The Super Safety |
|---|---|
| |  |
| said cam is in said first position, | . . . the cam is in the first position. |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,<br><br> |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | . . . at which time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br> |
| whereupon in a forced reset semi-automatic mode, | When in the "forced reset" semi-automatic mode, |

Case 3:26-cv-05045-MDH    Document 6    Filed 07/16/26    Page 24 of 116

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | . . . the cam is in the second position during at least part of the cycle and mechanically moves the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook. |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |

Case 3:26-cv-05045-MDH    Document 6    Filed 07/16/26    Page 25 of 116

| '247 Patent Claim 15 | The Super Safety |
| --- | --- |
| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm. |



49. An exemplary comparison of the Milspec Active Reset Conversion, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| '247 Patent Claim 15 | The Milspec Active Reset Conversion |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Milspec Active Reset Conversion is part of a trigger mechanism and functions as a cam that in at least one mode, both causes the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>cornfirearsenal.com https://corngunworks.com/ambidextrous-milspec-active-reset-conversion-ambi-marc/, and https://corngunworks.com/milspec-active-reset-conversion-marc/<br><br><br><br>**Milspec Active Reset Conversion** |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Milspec Active Reset Conversion (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear catch and a hook for engaging a disconnector (orange). |

| ’247 Patent Claim 15 | The Milspec Active Reset Conversion |
|---|---|
| | <br>(Plaintiff-generated renderings of Milspec Active Reset Conversion here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br>**Hammer Set Position** |

| '247 Patent Claim 15 | The Milspec Active Reset Conversion |
|---|---|
| |  **Hammer Released Position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Milspec Active Reset Conversion (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear. The trigger member (brown) has a sear. |

29

| '247 Patent Claim 15 | The Milspec Active Reset Conversion |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br>**(Trigger Member Set Position Above)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position.<br><br>**Trigger Member Released Position** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector |

30

| '247 Patent Claim 15 | The Milspec Active Reset Conversion |
|---|---|
| mechanism pocket to pivot on a transverse disconnector pivot axis, | pivot axis. The disconnector has a hook for engaging the hammer (red).<br><br>**Disconnector Hook Engaged** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Milspec Active Reset Conversion has a cam and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Milspec Active Reset Conversion, shown in yellow, in fire control mechanism pocket)<br><br>**Milspec Active Reset Conversion Cam with Lobe and Lever** |

31

| '247 Patent Claim 15 | The Milspec Active Reset Conversion |
|---|---|
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br><br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode.<br><br><br><br>**Cam and Lobe Second Position** |

32

| '247 Patent Claim 15 | The Milspec Active Reset Conversion |
|---|---|
| whereupon in a standard semi-automatic mode, said cam is in said first position, | During at least part of the cycle in the standard semi-automatic mode, the cam is in the first position. |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |

| '247 Patent Claim 15 | The Milspec Active Reset Conversion |
|---|---|
| |  |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | at which time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm<br><br> |

34

| '247 Patent Claim 15 | The Milspec Active Reset Conversion |
|---|---|
| whereupon in a forced reset semi-automatic mode, | When in the "forced reset" semi-automatic mode, |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | The cam is in the second position during at least part of the cycle and mechanically moves the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook. |

35

| '247 Patent Claim 15 | The Milspec Active Reset Conversion |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull said trigger member (brown) to fire the firearm. |

50.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '247 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate

direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and Milspec Active Reset Conversion. One example of this is the promotional material found on Defendants' website (https://corngunworks.com/super-safety-kit-user-guide/) that informs customers to install the Infringing Devices into an AR15:



51. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 15 of the '247 Patent.

52. On information and belief, Defendants also contribute to the infringement of the '247 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Super Safety and Milspec Active Reset Conversion, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '247 Patent.

53. Defendants have engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '247 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '247 Patent.

54. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

55. By their actions, Defendants' infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

38

56. By their actions, Defendants' infringement of the '247 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

57. Defendants' infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

58. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

59. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II — INFRINGEMENT OF THE '784 PATENT

60. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

61. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 patent. Such unlicensed products include the Super Safety and Milspec Active Reset Conversion.

62. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

63. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart below:

39

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as an extended trigger member locking device.<br><br><br><br>cornfirearsenal.com and<br>https://corngunworks.com/super-safety-kits/<br><br><br><br>**Super Safety**<br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| | <br>**Super Safety Installed**<br>(Plaintiff-generated renderings of Super Safety here and below; Locking member and bolt carrier shown here and below in section view for clarity)<br><br>"The Super Safety is a mechanism that actively resets the trigger of a firearm to allow the operator to fire again, quickly, and efficiently. The Super Safety has been designed to operate with AR-15 pattern firearms that use a mil-spec bolt carrier and fire control group." Super Safety Guide at 1. |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which the Super Safety locks the trigger member against pulling movement. |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| | **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Super Safety is moveable from the first position to a second position where it does not restrict movement of the trigger member. **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |

42

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| | |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier. |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position. |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| | **Unlocked Second Position** |
| the locking member having a body portion that is movably supported | The Super Safety has a body portion that is movably supported by the lower receiver. |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Super Safety has an upwardly extending deflectable portion (lever arm). The dovetail connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and |

44

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
|  | another position where it is deflected (depicted in green). Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving. "The dovetail joint does not immediately transfer torque from the lever to the cam. The lever pivots in the cam until the void is filled. Once the void is filled the hammer can transfer torque to the cam via the upper and lower contact surfaces and. Note that the |

45

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| | void, the lower contact surface, and the upper contact surface, are shown on arbitrary sides of the dovetail, these features may be on either side of the dovetail depending on which direction the lever is moving. The amount that the lever rotates in the dovetail before transferring torque to the cam is such that as the bolt carrier completes its forward movement, the cam rotates the neutral surface away from the cam follower and to a point where the cam follower begins to slide against the cam surface." (referenced numerals removed for clarity).    Super Safety Guide at 4. https://www.scribd.com/document/843484122/Super-Safety-Documentation |
| and a deflected position. | The lever is now shown deflected independent of the body. |

64.     An exemplary comparison of the Milspec Active Reset Conversion, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart below:

| '784 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Milspec Active Reset Conversion is part of a trigger |

| '784 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| | mechanism and functions as an extended trigger member locking device.<br><br><br><br><br><br>cornfirearsenal.com<br>https://corngunworks.com/ambidextrous-milspec-active-reset-conversion-ambi-marc/, and<br>https://corngunworks.com/milspec-active-reset-conversion-marc/<br><br><br><br>**Milspec Active Reset Conversion** |

| '784 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| | **Milspec Active Reset Conversion Installed** (Plaintiff-generated renderings of Milspec Active Reset Conversion here and below; Locking member and bolt carrier shown here and below in section view for clarity) |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Milspec Active Reset Conversion operates as a locking member and has a first position in which it locks the trigger member against pulling movement.<br><br>**Locked First Position** |

| '784 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| | |
| and a second position where it does not restrict movement of the trigger member, | The Milspec Active Reset Conversion is moveable from the first position to a second position where it does not restrict movement of the trigger member.<br><br>**Unlocked Second Position** |
| the locking member configured to be movably supported by a frame<br><br>. | The Milspec Active Reset Conversion is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |

49

| '784 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| | |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Milspec Active Reset Conversion has an upward extending portion (yellow lever arm) configured to make actuating contact with a surface of the bolt carrier.<br><br>The body portion (purple) has a track with holes that are lined up to correspond to the selectable modes (Fire/ Standard Semi-Automatic, "Forced Reset" Semi-Automatic) which are positively stopped by a detent (blue) |

| '784 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
|  | **Section View of Body Portion (purple), Lower Receiver (grey), and Detent (blue)**<br><br>Once installed, the body portion (purple) is movably supported by the lower receiver (grey) using the detent (blue). |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuation causes the locking member to move from the first position to the second position.<br><br>**Unlocked Second Position** |
| the locking member having a body portion that is movably supported | The Milspec Active Reset Conversion has a body portion (purple) that is movably supported by the lower receiver. |

| '784 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| | |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Milspec Active Reset Conversion has an upwardly extending deflectable portion (lever arm). The connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in yellow).<br><br><br><br>Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an |

Case 3:26-cv-05045-MDH    Document 6    Filed 07/16/26    Page 52 of 116

| '784 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| | overlay of the lever in both positions without the body portion moving.  |
| and a deflected position. | The lever is now shown deflected independent of the body. |

65. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '784 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and Milspec Active Reset Conversion while selling products. One example of this is the

promotional material found on Defendants' website (https://corngunworks.com/super-safety-kit-user-guide/) that informs customers to install the Infringing Devices into an AR15:



66.     On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '784 Patent.

67. On information and belief, Defendants also contribute to the infringement of the '784 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Super Safety and Milspec Active Reset Conversion, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '784 Patent.

68. Defendants have engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '784 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '784 Patent.

69. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

70. By their actions, Defendants' infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

71. By their actions, Defendants' infringement of the '784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

72. Defendants' infringement of the '784 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

73. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

74. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT III — INFRINGEMENT OF THE '538 PATENT

75. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

76. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '538 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '538 patent. Such unlicensed products include the Super Safety.

77. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '538 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

78. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '538 Patent is illustrated in the chart below:

56

| ’538 Patent Claim 1 | The Super Safety |
|---|---|
| 1. A safety mechanism for a firearm comprising: | The Super Safety is part of a trigger mechanism installed into a firearm receiver in place of a standard safety.<br><br><br><br>cornfirearsenal.com and https://corngunworks.com/super-safety-kits/<br><br><br><br>**Super Safety**<br>Ex. F, Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12. |

57

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| | **Super Safety Installed**<br><br>(Plaintiff-generated renderings of Super Safety here and below; cam selector and bolt carrier shown in section view for clarity) |
| a cam selector; | The Super Safety includes a dual mode cam selector that allows for selection of safe, active reset, and passive reset modes.<br><br>**Dual Mode Cam Selector**<br>Ex. F, Super Safety Guide at 1 |

58

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| | |
| a lever; | The Super Safety has a lever (pink) extending upward from the cam selector. |
| a trigger; | The cam selector operates on a trigger. (brown) |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| the cam selector comprising a first end, a second end, a top side, and a bottom side; | The Super Safety dual mode cam selector has two ends, a top side, and a bottom side as illustrated below.<br> |
| the cam selector comprising a longitudinal slot positioned on the top side of the cam selector; | The Super Safety dual mode cam selector comprises a longitudinal slot that is positioned on the top side and extends along the cam selector.<br> |
| the lever comprising a proximal end and a distal end; | The Super Safety lever (pink) has a proximal end and a distal end, as illustrated below.<br> |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| the longitudinal slot being configured to receive the proximal end of the lever; | The longitudinal slot on the top side of the cam selector (yellow) is configured to receive the proximal end of the lever (pink).<br><br>Ex. F, Super Safety Guide at 12<br><br>Super Safety Installed |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| the cam selector further comprising a first recess and a second recess on the bottom side of the cam selector; | The Super Safety dual mode cam selector has a first recess and a second recess on the bottom side of the cam.<br><br> |
| the trigger comprising a first trigger tail portion; | The Super Safety dual mode trigger has a first trigger tail portion, shown in the red box below.<br><br><br><br>Ex. F, Super Safety Guide at 10. |

62

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| | |
| the cam selector being configured to operate between a first mode, a second mode, and a third mode; | The Super Safety dual mode cam is operable in three modes: (1) passive reset (standard semi-automatic) (2) active reset, and (3) safe. Super Safety Guide at 1. |
| wherein the first mode of the cam selector is configured to allow the first trigger tail portion to be movable within the first recess, | The Super Safety dual mode cam selector is operable in standard semi-automatic mode, in which the first trigger tail aligns with the first recess of the cam.<br><br><br><br>**Standard Semi-Automatic Mode**<br><br>When the cam selector is in the first mode, the first trigger tail portion is movable within the first recess of the cam. |

63

| ’538 Patent Claim 1 | The Super Safety |
| --- | --- |
| |  |

(Super Safety Installed)

Super Safety Installed, Trigger Pulled, Lever and Cam Rotated

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| wherein the second mode of the cam selector is configured to allow the first trigger tail portion to engage the second recess | The Super Safety dual mode cam selector is operable in active reset mode, in which the first trigger tail aligns with the second recess of the cam.<br><br><br><br>**Active Reset Mode** |
| and be moved down by a cam portion of the second recess when the cam selector rotates, | In the second mode, when the cam is rotated by the lever, the cam selector portion of the second recess moves the first trigger tail portion down.<br><br><br><br>**Super Safety Installed, Trigger Pulled** |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| |

**Super Safety Installed, Lever and Cam Rotated**

|
| and wherein the third mode of the cam selector is configured to prevent the trigger from being pulled. | The Super Safety dual mode cam is operable in safe mode, in which the first trigger tail portion does not align with a recess in the cam. The trigger is not movable within a recess of the cam, and the cam therefore prevents the trigger from being pulled. |

| '538 Patent Claim 1 | The Super Safety |
| --- | --- |
| |  |

79.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '538 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety while selling products. One example of this is the promotional material found on Defendants' website (https://corngunworks.com/super-safety-kit-user-guide/) that informs customers to install the Infringing Devices into an AR15:

# Super Safety Guide

Still a work in progress.

| | |
|---|---|
| **Theory of Operation** | 2 |
| **Overview of Components** | 3 |
| Safety Cam & Lever | 3 |
| Cut Trigger | 3 |
| Rounded Detent | 3 |
| Plastic Spacer | 3 |
| Trigger Jig | 3 |
| **Installation Guide** | 4 |
| Don't be a dumbass | 4 |
| Recommended Tools | 4 |
| Removing existing parts | 5 |
| Removal of pistol grip, safety | 6 |
| Removal of hammer, trigger | 7 |
| Installation of the trigger | 7 |
| Instillation of the safety | 8 |
| Changing Buffers | 10 |
| Function testing | 10 |
| **Common Issues and Troubleshooting** | 11 |
| Bolt carrier group stuck in rear | 11 |
| Firing in bursts / light primer strikes | 12 |
| Safety does not reset the trigger | 13 |
| I fire once then I can't and it's stuck on safe / The lever doesn't go back forward | 13 |
| Unable to pull trigger in middle position | 13 |
| Not cycling / weak ejection / not picking up round off magazine | 13 |

80.     On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '538 Patent.

81.     On information and belief, Defendants also contribute to the infringement of the '538 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by

Defendants of the components of the Super Safety, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '538 Patent.

82. Defendants have engaged in egregious infringement behavior with knowledge of the '538 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '538 Patent and that the '538 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '538 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '538 Patent.

83. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '538 Patent pursuant to 35 U.S.C. § 271.

84. By their actions, Defendants' infringement of the '538 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

85. By their actions, Defendants' infringement of the '538 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

86. Defendants' infringement of the '538 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

87. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

88. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV — INFRINGEMENT OF THE '159 PATENT

89. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

90. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '159 patent. Such unlicensed products include the Super Safety and Milspec Active Reset Conversion.

91. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

92. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt | When installed and used as directed, the Super Safety is part of a reset trigger mechanism that uses a bolt means. With the Super Safety installed, the trigger mechanism operates in a standard semi-automatic mode and a semi-automatic mode |

70

| '159 Patent Claim 1 | The Super Safety |
| --- | --- |
| means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: |

cornfirearsenal.com and https://corngunworks.com/super-safety-kits/



**Super Safety**

Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12

 |

71

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | **Super Safety (Installed)**<br><br>(Plaintiff-generated renderings of the<br>Super Safety here and below) |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange).<br><br><br><br>**Super Safety (Installed)** |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means.<br><br><br><br>**Hammer Set Position** |

Case 3:26-cv-05045-MDH    Document 6    Filed 07/16/26    Page 72 of 116

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| |  **Hammer Released Position** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis | The Super Safety (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface. |
| between set and |  **Trigger Member Set Position** |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| released positions, | <br><br><br><br><br><br><br>**Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br><br><br>**Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position. |

74

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | **Trigger Member and Hammer Member Released Positions** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red). **Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be movably mounted in the | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Super Safety, shown in yellow, in fire control mechanism pocket) |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| fire control mechanism pocket, | <br><br>**Super Safety Cam with Lobe and Lever** |
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position.<br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode. |

Case 3:26-cv-05045-MDH    Document 6    Filed 07/16/26    Page 76 of 116

| ’159 Patent Claim 1 | The Super Safety |
|---|---|
| | <br>**Cam and Lobe Second Position** |
| whereupon in the first mode, | While in the first (standard semi-automatic) mode,<br> |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| |  **Disconnector Hook Catches the Hammer** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery, |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | **Pressure on Trigger Member Prevents Reset** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br>**Reduced Pressure on Trigger Member Allows Reset** |
| whereupon in a second mode, | When in the second ("forced reset" semi-automatic) mode, |

Case 3:26-cv-05045-MDH   Document 6   Filed 07/16/26   Page 79 of 116

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam to mechanically move the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook. |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position, |

80

Case 3:26-cv-05045-MDH    Document 6    Filed 07/16/26    Page 80 of 116

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| at which time the user can pull the trigger member to fire the firearm. | at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member.<br><br> |

93. An exemplary comparison of the Milspec Active Reset Conversion, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed and used as directed, the Milspec Active Reset Conversion is part of a firearm trigger mechanism that uses a bolt means. With the Milspec Active Reset Conversion installed, the trigger mechanism operates in a standard semi-automatic mode and a "forced reset" semi-automatic mode<br><br><br><br><br><br>cornfirearsenal.com https://corngunworks.com/ambidextrous-milspec-active-reset-conversion-ambi-marc/, and https://corngunworks.com/milspec-active-reset-conversion-marc/<br><br><br><br>**Milspec Active Reset Conversion** |

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| | **Milspec Active Reset Conversion** (**Installed**)<br><br>(Plaintiff-generated renderings of the<br>Milspec Active Reset Conversion here and below) |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Milspec Active Reset Conversion (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange).<br><br><br>**Milspec Active Reset Conversion (Installed)** |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means. |

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| movement of a bolt means, | \n\n**Hammer Set Position**\n\n\n\n**Hammer Released Position** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis | The Milspec Active Reset Conversion (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface. |

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| between set and<br><br>released positions, | <br>**Trigger Member Set Position**<br><br>**Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions. |

85

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| | <br>**Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position.<br><br>**Trigger Member and Hammer Member Released Positions** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red). |

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| transverse disconnector pivot axis, and |

**Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Milspec Active Reset Conversion has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Milspec Active Reset Conversion, shown in yellow, in fire control mechanism pocket)

**Milspec Active Reset Conversion Cam with Lobe and Lever** |
| the cam being movable between a first position | The cam is movable between a first position and a second position. |

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| and a second position, in the second position the cam lobe forces the trigger member toward the set position, | **Cam and Lobe First Position**<br><br>In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode.<br><br>**Cam and Lobe Second Position** |
| whereupon in the first mode, | While in the first (standard semi-automatic) mode, |

88

Case 3:26-cv-05045-MDH    Document 6    Filed 07/16/26    Page 88 of 116

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
| --- | --- |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | **Cam in the First (Semi-Automatic) Mode** Rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. **Disconnector Hook Catches the Hammer** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery, |

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| | <br><br><br><br>**Pressure on Trigger Member Prevents Reset** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the | . . . at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

90

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| user can pull the trigger member to fire the firearm, and | **Reduced Pressure on Trigger Member Allows Reset**) |
| whereupon in a second mode, | When in the second ("forced reset" semi-automatic) mode, **Cam in the Second ("Forced Reset" Semi-Automatic) Mode** |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam to move the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook. |

91

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| | |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position,<br> |
| at which time the user can pull the trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member. |

| '159 Patent Claim 1 | The Milspec Active Reset Conversion |
|---|---|
| |  |

94. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '159 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and Milspec Active Reset Conversion while selling products. One example of this is the promotional material found on Defendants' website (https://corngunworks.com/super-safety-kit-user-guide/) that informs customers to install the Infringing Devices into an AR15:

# Super Safety Guide

Still a work in progress.

**Theory of Operation** — 2
**Overview of Components** — 3
    Safety Cam & Lever — 3
    Cut Trigger — 3
    Rounded Detent — 3
    Plastic Spacer — 3
    Trigger Jig — 3
**Installation Guide** — 4
    Don't be a dumbass — 4
    Recommended Tools — 4
    Removing existing parts — 5
        Removal of pistol grip, safety — 6
        Removal of hammer, trigger — 7
    Installation of the trigger — 7
    Instillation of the safety — 8
    Changing Buffers — 10
    Function testing — 10
**Common Issues and Troubleshooting** — 11
    Bolt carrier group stuck in rear — 11
    Firing in bursts / light primer strikes — 12
    Safety does not reset the trigger — 13
    I fire once then I can't and it's stuck on safe / The lever doesn't go back forward — 13
    Unable to pull trigger in middle position — 13
    Not cycling / weak ejection / not picking up round off magazine — 13

95.    On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '159 Patent.

96.    On information and belief, Defendants also contribute to the infringement of the '159 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by

Defendants of the components of the Super Safety and Milspec Active Reset Conversion, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '159 Patent.

97. Defendants have engaged in egregious infringement behavior with knowledge of the '159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '159 Patent and that the '159 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '159 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '159 Patent.

98. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '159 Patent pursuant to 35 U.S.C. § 271.

99. By their actions, Defendants' infringement of the '159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

100. By their actions, Defendants' infringement of the '159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

101. Defendants' infringement of the '159 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

102.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

103.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT V — INFRINGEMENT OF THE '403 PATENT

104.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

105.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '403 patent. Such unlicensed products include the Infringing Devices.

106.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents.

107.    An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 38 of the '403 patent is illustrated in the chart below:

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Super Safety is part of a trigger mechanism. |

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| | cornfirearsenal.com and https://corngunworks.com/super-safety-kits/ **Super Safety** Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Super Safety (yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and pivots on a transverse axis. |

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| | **Super Safety (Installed)** (Plaintiff-generated renderings of Super Safety here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis; a trigger member; and | The Super Safety is installed along with a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis, and a trigger member (brown) **Disconnector and Trigger Member** |
| a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position, | The Super Safety is a safety selector adapted to be movable between a standard semi-automatic position, |

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| |

**Super Safety (installed) in Standard Semi-Automatic Position**

. . . and a "forced reset" semi-automatic position,

**Super Safety (installed) in "Forced Reset" Semi-Automatic Position** |
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated. |

99

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| | |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange),<br><br><br><br>**Hammer Hook is Past Disconnector Hook** |
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm. |

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| | <br>**Pressure Must be reduced** |

108. An exemplary comparison of the Milspec Active Reset Conversion, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

| '403 Patent Claim 38 | The Milspec Active Reset Conversion |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Milspec Active Reset Conversion is part of a trigger mechanism.<br><br>cornfirearsenal.com https://corngunworks.com/ambidextrous-milspec-active-reset-conversion-ambi-marc/, and https://corngunworks.com/milspec-active-reset-conversion-marc/<br><br>**Milspec Active Reset Conversion** |

| '403 Patent Claim 38 | The Milspec Active Reset Conversion |
|---|---|
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Milspec Active Reset Conversion (yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and pivots on a transverse axis.<br><br>**Milspec Active Reset Conversion (Installed)**<br><br>(Plaintiff-generated renderings of Milspec Active Reset Conversion here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;<br><br>a trigger member; and | The Milspec Active Reset Conversion is installed along with a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis, and a trigger member (brown).<br><br>**Disconnector and Trigger Member** |

| '403 Patent Claim 38 | The Milspec Active Reset Conversion |
|---|---|
| a safety selector adapted to be movable between a standard semi-automatic position | The Milspec Active Reset Conversion is a safety selector adapted to be movable between a standard semi-automatic position,<br><br><br><br>**Milspec Active Reset Conversion (installed) in Standard Semi-Automatic Position** |
| and a forced reset semi-automatic position, | . . . and a "forced reset" semi-automatic position,<br><br><br><br>**Milspec Active Reset Conversion (installed) in "Forced Reset" Semi-Automatic Position** |

| '403 Patent Claim 38 | The Milspec Active Reset Conversion |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated.  |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange),  |

| '403 Patent Claim 38 | The Milspec Active Reset Conversion |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm.<br> |

109. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '403 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products. One example of this is the promotional material found on Defendants' website (https://corngunworks.com/super-safety-kit-user-guide/) that informs customers to install the Infringing Devices into an AR15:

https://corngunworks.com/super-safety-kit-user-guide/

**Corn Gunworks LLC**                                                    Search

# Super Safety Guide

Still a work in progress.

**Theory of Operation**                                                    2
**Overview of Components**                                                 3
    Safety Cam & Lever                                  3
    Cut Trigger                                         3
    Rounded Detent                                      3
    Plastic Spacer                                      3
    Trigger Jig                                         3
**Installation Guide**                                                     4
    Don't be a dumbass                                  4
    Recommended Tools                                   4
    Removing existing parts                             5
        Removal of pistol grip, safety    6
        Removal of hammer, trigger        7
    Installation of the trigger                         7
    Instillation of the safety                          8
    Changing Buffers                                   10
    Function testing                                   10
**Common Issues and Troubleshooting**                                     11
    Bolt carrier group stuck in rear                   11
    Firing in bursts / light primer strikes            12
    Safety does not reset the trigger                  13
    I fire once then I can't and it's stuck on safe / The lever doesn't go back forward    13
    Unable to pull trigger in middle position          13
    Not cycling / weak ejection / not picking up round off magazine    13

110.    On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 38 of the '403 Patent.

111.    On information and belief, Defendants also contribute to the infringement of the '403 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by

Case 3:26-cv-05045-MDH    Document 6    Filed 07/16/26    Page 107 of 116

Defendants of the components of the Infringing Devices, such as the trigger assembly or the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '403 Patent.

112. Defendants have engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '403 Patent and that the '403 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '403 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '403 Patent.

113. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '403 Patent pursuant to 35 U.S.C. § 271.

114. By their actions, Defendants' infringement of the '403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

115. By their actions, Defendants' infringement of the '403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

116. Defendants' infringement of the '403 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

117. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

118. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VI — FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(1)

119. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

120. As described above, Plaintiff RBTM is the owner and Plaintiff Rare Breed is the exclusive licensee of the FRT Marks in connection with firearm triggers.

121. The federal trademark registrations for the FRT Marks as detailed above are in full force and effect. Plaintiff RBTM owns all right, title, and interest in and to these federal trademark registrations.

122. The FRT Marks are inherently distinctive and have acquired significant goodwill in the marketplace through Plaintiffs' continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT Marks have become uniquely associated in the minds of consumers and the trade with Plaintiffs.

123. The reputation Plaintiffs have built in the FRT Marks is of great value to Plaintiffs.

124. Plaintiffs' use of and rights in the FRT Marks predate any use by Defendants of FRT.

125. Defendants are wrongfully using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

126. Defendants' use of the FRT Marks was and is without Plaintiffs' consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendants' products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

127. Defendants' unlawful acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

128. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the FRT Marks and any mark confusingly similar to the FRT Marks.

129. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

## COUNT VII — FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125(A)

130. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

131. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous and substantially exclusive use of the FRT Marks since at least as early as 2020, which is well before any use of FRT by Defendants.

132. Plaintiffs' common law rights in the FRT Marks predate Defendants' infringing use of FRT and any other confusingly similar name or mark comprised of or containing FRT.

133. Defendants are using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

134. Defendants' actions described above constitute use of a false designation of origin that wrongfully and falsely designates the origin of Defendants' goods and services and is likely to cause confusion or mistake and/or to deceive as to affiliation, connection, or association or as to the origin, sponsorship, or approval of Defendants' goods by Plaintiffs. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

135. Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior rights in the FRT Marks, are knowing, willful, and done in bad faith.

136. Defendants' acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

137. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the FRT Marks or any other mark confusingly similar to the FRT Marks.

138. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

### COUNT VIII — COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

139. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

140. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous use of the marks since at least as early 2020, prior to any use of FRT by Defendants.

141. Plaintiffs' common law rights in the FRT Marks predate Defendants' infringing use of FRT and/or other confusingly similar marks comprised of or containing FRT.

142. Defendants are using FRT as a source identifier in U.S. commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

143. Defendants' use of FRT was and is without Plaintiffs' consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendants' goods and services. As such, Defendants' acts constitute trademark infringement and unfair competition under common law.

144. Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior common law rights in the FRT Marks are knowing, willful, and done in bad faith.

145. Defendants' acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Plaintiffs for which it has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

146. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using FRT or any other mark confusingly similar to the FRT Marks.

147. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT mark, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

a. Each of the Asserted Patents has been and continues to be infringed by Defendants;

b. Defendants' infringement of each of the Asserted Patents has been, and continues to be, willful;

c. Each of the Asserted Patents is enforceable and not invalid;

d. That Defendants willfully infringed Plaintiffs' registered FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1114;

e. That Defendants committed willful acts of false designation of origin through their unauthorized use of the FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a);

f. That Defendants engaged in conduct constituting unfair competition under applicable law;

g. A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

h. A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries,

113

parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

      i.    Consistent with the above, order Defendants to (1) remove from display any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FRT Marks or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term, including from all Internet webpages and social media accounts within Defendants' custody or control; and (2) deliver to the Court for destruction, or to show proof of destruction of, any and all physical advertisements and marketing, promotional materials, and sales materials comprising, bearing, or displaying the term "FRT" or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term;

      j.    An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

      k.    An award of all other damages permitted by 35 U.S.C. § 284 and 15 U.S.C. § 1117(a), including increased damages up to three times the amount of compensatory damages found;

      l.    An award of all profits received by Defendants from sales and revenues of any kind made as a result of their trademark infringement and unfair competition;

m.      An award of all damages sustained by Plaintiffs as a result of Defendants' infringement and unfair competition, including ascertainable damages, the costs incurred by Plaintiffs for corrective advertising, the costs for this action, and Plaintiffs' reasonable attorneys' fees;

n.      A finding that this action is an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117, and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

o.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: July 16, 2026                Respectfully submitted,

*/s/ David R. Barnard*
David R. Barnard, MO# 47127
**STINSON LLP**
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
david.barnard@stinson.com
Tel: (816) 691-2608
Fax: (816) 412-1017

B. Scott Eidson, MO# 57757
**STINSON LLP**
7700 Forsyth Blvd., Suite
1100 St. Louis, MO 63105
scott.eidson@stinson.com
Tel: (314) 259-4575
Fax: (314) 259-3924

Glenn D. Bellamy
**WOOD HERRON & EVANS LLP**

115

600 Vine Street, Suite 2800
Cincinnati OH 45202
gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Matthew A. Colvin (Pro Hac
Vice) Texas Bar No. 24087331
Carl E. Bruce (Pro Hac
Vice) Texas Bar No.
24036278
**FISH & RICHARDSON
P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
colvin@fr.com
bruce@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff (Pro Hac
Vice) DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1001 Maine Avenue SW, Suite 1000
Washington, DC
20024
christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

*Attorneys for Plaintiffs*
*ABC IP, LLC, and Rare Breed Triggers, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on July 16, 2026, to all counsel of record who are deemed to have

consented to electronic service via the Court's CM/ECF system.

*/s/ David R. Barnard*
Attorney for Plaintiffs

116